178 F.2d 841
 DENTON & ANDERSON CO.
v.
INDUCTION HEATING CORPORATION.
 No. 87.
 Docket 21455.
 United States Court of Appeals Second Circuit.
 Argued December 7, 1949.
 Decided December 23, 1949.
 
 Macklin, Speer, Hanan & McKernan, New York City; Conlen, LaBrum & Beechwood, Philadelphia, Pa. (James B. Doak, Philadelphia, Pa., and Leo F. Hanan, New York City, of counsel), for appellant.
 Krause, Hirsch, Levin & Heilpern, New York City (Sydney Krause and Elliot L. Krause, New York City, of counsel), for appellee.
 Before L. HAND, Chief Judge, and SWAN and FRANK, Circuit Judges.
 
 
 1
 The debtor, Induction Heating Corp., engaged in the manufacture and sale of goods under the trade-name "Thermonic," on November 30, 1948, filed a petition for arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. The debtor had, on July 18, 1945 entered into a written contract with appellant, The Denton and Anderson Company. The contract, which called debtor the Manufacturer and appellant the Representative, gave appellant the exclusive right, in the name of the debtor, to submit and procure orders for debtor's goods in certain designated areas, subject to acceptance by debtor. The contract provided, inter alia, the following:
 
 
 2
 "4. Promptly upon receipt of an order, the Manufacturer will notify the Representative and the customer of its acceptance, if accepted; and if rejected, notify the Representative only, assigning reasons therefore.
 
 
 3
 "5. The Manufacturer will ship Thermonic equipment on orders received and accepted as nearly as possible on the date specified in the acceptance of the orders and furnish the Representative with copy of the invoice upon completing shipments, provided, however, all shipping dates are approximate only and subject to Manufacturer's approval and dependent upon Manufacturer's prompt receipt of all details essential to the proper execution of the orders, and provided, further that Manufacturer shall not be liable for failure to complete such orders according to their terms where such failure is due to strikes, fires, inability to obtain raw material or parts required, or causes of any other nature beyond its control.
 
 
 4
 "6. The Manufacturer will use its best efforts in collecting all accounts for Thermonic equipment sold in the territory.
 
 
 5
 "7. The Manufacturer will, at its own expense, assist the Representative and/or Purchaser in correcting any default which causes the Thermonic equipment to fail to meet the specifications, terms and warranties under which it is sold.
 
 
 6
 "8. The Manufacturer will, as soon after the 15th day of each month as is possible, prepare and deliver to the Representative, a statement of accounts as of the 1st of that month and a commission statement showing customer's name and address, invoice number, amount of invoice and amount of commission on all shipments made by the Manufacturer in the Territory during the month next preceding. Commissions shall become due and payable only when the account is collected by the Manufacturer from the customer."
 
 
 7
 The contract further provided for rates of commission to be paid by debtor to appellant "on or before the 15th day of the month next following receipt by Manufacturer of payment in full therefor" of goods sold on orders procured by appellant. The contract also provided:
 
 
 8
 "21. It is agreed that no orders obtained by the Representative shall be binding upon the Manufacturer until accepted at its office in New York City and that the Manufacturer may, without liability for commissions, reject any order obtained by the Representative.
 
 
 9
 "22. The Representative shall not be entitled to commissions on orders for equipment which are for any reason refused by the purchaser or returned to the Manufacturer. If any such commissions have been paid, the Manufacturer may deduct the amount thereof from subsequent commissions due to the Representative.
 
 
 10
 "24. This agreement shall inure to the benefit of and be binding only upon the parties hereto; it shall not be assigned or transferred by either party without the written consent of the other and shall continue in full force and effect until terminated by either party hereto giving to the other 90 days written notice of its intention so to do; provided, however, that this agreement may be terminated at once at the option of either party, in the event of the commencement of proceedings in receivership, bankruptcy or insolvency by or against the other party hereto or upon the execution of an assignment for the benefit of creditors or the voluntary dissolution or liquidation of its business by such other party hereto, but such termination shall be without prejudice to the right to assert any claims whatsoever arising under the provisions of this agreement including any claim for monies due or for damages sustained on account of such receivership, bankruptcy, insolvency, assignment for the benefit of creditors or dissolution or liquidation of such business."
 
 
 11
 Section 357(6) of the Bankruptcy Act — 11 U.S.C.A. § 757(6) — authorizes an arrangement to include provisions for priority for debts "incurred after the filing of the petition and during the pendency of the arrangement". The arrangement here — accepted by the majority of the creditors and confirmed by the Referee — provided that the debtor should remain in possession, and included the following provisions:
 
 
 12
 "9. Current Operation. All expenses and obligations incurred in the conduct of the debtor's business from the date of the filing of the petition for arrangement to the date of the entry of the order confirming the arrangement shall be entitled to payment in full as expenses of administration. All expenses incurred in the conduct of the debtor's business and all contracts for the purchase of new merchandise on and after the date of the entry of the order of confirmation herein shall have priority over all of the debtor's present or existing obligations, which are the subject of the extension provided for in this arrangement." No debt to appellant was scheduled by the debtor when it filed its petition for arrangement.
 
 
 13
 Before the filing of the petition for arrangement, appellant had secured orders for debtor's goods which debtor had accepted, but not filled. However, after the date of the filing of the arrangement, the debtor filled those orders and was paid by the customers. The amount of commissions, under the contract rates, on these orders, was $11,226.72.
 
 
 14
 Appellant moved for an order to require the debtor to pay this amount to appellant as an administration expense entitled to priority. The Referee in Bankruptcy entered an order denying this motion but directing that the claim be allowed as a general creditor's claim. The district court ordered that a petition for review of the Referee's order be denied. Appellant appeals.
 
 
 15
 FRANK, Circuit Judge.
 
 
 16
 Appellant's claim was not a debt "incurred" after the date of the filing of the arrangement petition. It was "incurred," before that date, when debtor accepted the orders obtained by appellant. That the debtor did not schedule any debt to appellant has no significance.
 
 
 17
 When the arrangement went into effect, and before the orders were filled and the debtor was paid, appellant could at once — under Bankruptcy Act Sections 57, sub. d and 63, sub. a(8) — have filed a claim either[1] (1) as an unliquidated claim or (2) as a contingent claim.[2] For appellant had fully performed, and the only possible questions were (a) whether the amount of the claim could be determined, and if so, (b) what the amount was. Had the orders not been filled and debtor paid, it would have been necessary, at most, in ascertaining the amount of the claim, to consider (because of clause 5 of the contract) the likelihood of the debtor's inability to fill the orders, and (because of clause 8) to take into account the credit standing of the customers who had given the orders. The facts that the orders were filled and the debtor paid by the customers served to remove any possible necessity for such an inquiry. But those facts did not convert appellant's claim into a preferred claim.
 
 
 18
 We see nothing in appellant's contention that appellant should have a preferred claim because the debtor's estate was, by appellant's services, enriched when debtor, having filled the orders, was paid. The estate was no more enriched than it would have been had the debtor bought goods on credit before filing the arrangement and sold them afterwards; and no one would argue that the unpaid seller of such goods is entitled to more than a general claim.
 
 
 19
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 We need not decide which
 
 
 [2]
 Section 57, sub. d — 11 U.S.C.A. § 93, sub. d — reads in part: "Provided, however, That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated in the manner and within the time directed by the court; and such claim shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under the act."
 Bankruptcy Act, Section 63, sub. a, (8) — 11 U.S.C.A. § 103, sub. a, (8) — reads: "Debts of the bankrupt may be proved and allowed against his estate which are founded upon * * * (8) contingent debts and contingent contractual liabilities".
 Section 63, sub. d — 11 U.S.C.A. § 103, sub. d — reads: "Where any contingent or unliquidated claim has been proved, but, as provided in subdivision d of Section 57 of this act, has not been allowed, such claim shall not be deemed provable under this act."
 See Collier on Bankruptcy (14th ed.) Sections 57.15 and 63.30.